**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

Misc. Cause No. _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | **N.D. Tex. Civil Action No.** **4:23-cv-1224-P** |
| **AGRIDIME LLC, JOSHUA LINK, and JED WOOD,** | § § § | |
| *Defendants.* | § § | |

**28 USC § 754 NOTICE OF FILING OF**
**COMPLAINT AND ORDER APPOINTING RECEIVER, STEVE FAHEY**

By Order of the United States District Court for the Northern District of Texas, Fort Worth Division, entered on December 11, 2023, Steve Fahey, was appointed Receiver ("Receiver") over the Estates of the Receivership Defendants,[1] in the matter, *SEC v. Agridime LLC; Joshua Link; and Jed Wood*, No. 4:23-cv-1224-P (N.D. Tex.).

Pursuant to 28 U.S.C. § 754, attached hereto are true and copies of the underlying complaint filed by the Securities and Exchange Commission (N.D. Tex. ECF No. 1) (**Exhibit A**)[2] and the Order Appointing Receiver (N.D. Tex. ECF No. 15) (**Exhibit B**).

---

[1]   "Receivership Defendants" are Agridime LLC, Joshua Link, and Jed Wood. N.D. Tex. ECF No. 15 at ¶¶ 1-2.

[2]   The complaint was originally filed under seal. By electronic court order dated December 13, 2023, N.D. Tex. ECF No. 17, the court unsealed the docket.

Dated: February 14, 2024.                     Respectfully submitted,

                                              /s/ Colin P. Benton
                                              Brant C. Martin
                                              State Bar No. 24002529
                                              brant.martin@wickphillips.com
                                              David J. Drez III
                                              State Bar No. 24007127
                                              david.drez@wickphillips.com
                                              Colin P. Benton
                                              State Bar No. 24095523
                                              colin.benton@wickphillips.com

                                              **WICK PHILLIPS GOULD & MARTIN, LLP**
                                              100 Throckmorton Street, Suite 1500
                                              Fort Worth, Texas 76102
                                              Telephone:    (817) 332-7788
                                              Fax:          (817) 332-7789

                                              **ATTORNEYS FOR COURT-APPOINTED
                                              RECEIVER STEPHEN P. FAHEY**

# EXHIBIT A

SEALED

DEC 11 2023 AM8:50
FILED-USDC-NDTX-FW

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) **4-23CV-1224P** |
| | ) |
| **AGRIDIME LLC,** | ) **FILED UNDER SEAL** |
| **JOSHUA LINK, and** | ) JURY TRIAL DEMANDED |
| **JED WOOD,** | ) |
| | ) |
| Defendants, | ) |
| | ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges:

## NATURE OF THE ACTION

1.      The Commission brings this action to halt an ongoing, fraudulent, and unregistered offering of securities and active Ponzi scheme being perpetrated on investors by Agridime LLC ("Agridime"), Joshua Link, and Jed Wood (collectively, "Defendants").

2.      Since 2021, Agridime has raised at least $191 million from more than 2,100 investors in at least 15 states, selling investment contracts related to the purchase and sale of cattle ("Cattle Contracts"). Defendants promised investors guaranteed annual returns ranging from 15% to 32% and marketed the Cattle Contracts on Agridime's websites as a way for investors to passively profit from cattle ownership "without having to do all the work." In advertising, the Defendants boasted, "We know it sounds too good to be true."

3.      Unfortunately for investors, the investment offering was too good to be true. Agridime has used at least $58 million of investor funds—that Agridime represented would be

used to purchase, feed, and process cattle—to pay returns to existing investors. Defendants did not buy the number of cattle required to fulfill the Company's obligations under the Cattle Contracts, and as a result Agridime has only been able to return principal and pay promised returns by making Ponzi payments. Defendants have never disclosed these Ponzi payments when soliciting new investors. And they have failed to disclose that they have used an additional $11 million to pay 10% commissions to salespeople, including owners Wood and Link, who also solicit investments in Agridime Cattle Contracts.

4.      Agridime has violated cease-and-desist orders issued earlier this year by Arizona and North Dakota by continuing to sell its securities in fraudulent, unregistered transactions in those states. Agridime has sold more than $1 million of Cattle Contracts to Arizona residents since the entry of the Arizona order and more than $9 million to North Dakota residents since the issuance of that state's order. And on October 18, 2023, an Agridime salesman in Arizona admitted under oath that he is still selling Cattle Contracts from Arizona.

5.      Through their actions, Defendants violated, and unless enjoined will continue to violate, the antifraud and securities-registration provisions of the federal securities laws, namely Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]. Under Section 20(a) of the Exchange Act, Defendants Link and Wood are also liable as control persons for Agridime's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15 U.S.C. §§ 77o(a) and 78t(a)]. Unless Defendants are enjoined by the Court, they will continue to fraudulently offer and sell unregistered securities in violation of the federal securities laws.

6.        To protect the public from further fraudulent activity, the SEC brings this action against Defendants and seeks: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains, plus prejudgment interest; and (iii) civil penalties. Because of the ongoing nature of the fraudulent offering and Ponzi scheme, and the risk of continuing investor loss and asset dissipation, the Commission also seeks emergency relief against Defendants, including a temporary restraining order (and preliminary injunction), an asset freeze, the appointment of a receiver, an accounting, and orders expediting discovery, permitting alternative means of service, and prohibiting alteration or destruction of documents.

## DEFENDANTS

7.        **Agridime LLC** is a Texas limited liability company co-founded by Link and Wood in 2017, with its principal place of business in Fort Worth, Texas. Link and Wood jointly control Agridime as its highest-ranking officers and managing members, each owning a 45.5% interest in the company. Agridime has operations in Texas, Arizona, Kansas, North Dakota, and other states, and purports to be a meat-distribution company with a "proprietary beef supply chain." Agridime is subject to cease-and-desist orders issued by securities regulators in Arizona and North Dakota.

8.        **Joshua Link**, age 30, resides in Gilbert, Arizona. He is an owner, managing member, and the Executive Director of Agridime. He co-founded and jointly controls Agridime with Wood. Link is subject to cease-and-desist orders issued by securities regulators in Arizona and North Dakota. On November 11, 2023, Arizona filed a contempt motion against Agridime and Link for violating its order.

3

9.      **Jed Wood**, age 62, resides in Fort Worth, Texas. He is an owner, managing

member, and the Operations Director of Agridime. He co-founded and jointly controls Agridime

with Link.

## JURISDICTION AND VENUE

10.      The Commission brings this action pursuant to authority conferred upon it by

Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections

21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

11.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and

22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e),

and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

12.      The defendants offered and sold investment contracts purportedly relating to

cattle. Pursuant to Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section

3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], Defendants' Cattle Contracts are

securities because they are investment contracts.

13.      In connection with the conduct described in this Complaint, Defendants, directly

or indirectly, made use of the mails or the means or instruments of transportation or

communication in interstate commerce by, among other means, soliciting and accepting

investments via the Internet, transmitting investor contracts via email, executing investor

contracts via an on-line software portal, and accepting investor deposits via mail, wire, or other

electronic-funds transfer.

14.      Venue is proper in this District because at all relevant times: (a) Agridime

maintained its principal place of business in Fort Worth; (b) Wood resided in Fort Worth; and (c)

Agridime, Wood, and Link conducted business in this District. Further, acts, transactions, and

courses of business constituting violations of the federal securities laws alleged in this Complaint occurred within this District, including but not limited to Defendants' solicitations of investors and the acceptance and disbursement of investor funds.

## FACTUAL ALLEGATIONS

I.      **Link and Wood Founded and Control Agridime**

15.     Link and Wood have served as Agridime's highest-ranking officers since co-founding the company in 2017.

16.     Wood controls Agridime's cattle operations, including overseeing the firm's finances. Wood signs Agridime's checks and, with the assistance of the company's controller, is primarily responsible for overseeing the bank accounts, including payments to and from investors.

17.     Link serves as Agridime's Executive Director, a role he describes as equivalent to CEO. He has personally solicited investors, trained and directed the activities of Agridime's salespeople, and executed Cattle Contracts on Agridime's behalf.

II.     **Defendants Offered and Sold Fraudulent Cattle Contracts**

18.     Since at least January 2021, Agridime has raised over $191 million from more than 2,100 investors in at least 15 states, purporting to sell investments in cattle under Cattle Contracts.

19.     In the Cattle Contracts, Agridime agreed to: (a) sell cattle to an investor for $2,000 per calf; and (b) after a year, buy back the same cattle at a higher price to provide a specific guaranteed investment return. Agridime told investors it would use their funds to purchase, feed, finish, process, and sell specific cattle. Instead of using investor funds to do these things, Agridime instead diverted tens of millions of dollars in investor funds to make Ponzi

payments to prior investors. As a result, Agridime has not purchased enough cattle to fulfill its Cattle Contracts. Agridime's investors, therefore, do not actually invest in specific, identifiable animals. Instead, the success of their investments depends on the success of Agridime's purported cattle operation, including its ability to attract new investors.

20.     The Cattle Contract investor's role is entirely passive. On its website at www.agridime.com, Agridime described the Cattle Contracts as an opportunity to "make money raising cattle without having to do all the work." The investor did not take delivery of any cattle and assumed no responsibility for the care or feeding of any cattle.

21.     Since at least August 2023, Agridime has also offered a new variant of its Cattle Contract from the company's new website at www.agridimestore.com, soliciting investments on its website of $4,500 "for the purchase of one bred cow in [Agridime's] supply chain and [for Agridime] to feed that cow until it gives birth to its calf. This cow will remain on [Agridime's] ranches & will be fed and cared for during this time." Under this variant, the investor still does not take delivery of any cattle and assumes no responsibility for their care or feeding. Indeed, these Cattle Contracts make the investor's passive role even more clear, explicitly stating that "[t]he cattle purchased from Agridime . . . shall remain in the care and custody of Agridime."

22.     Agridime promises investors "guaranteed 15-20% yearly profits" on the Cattle Contracts and even guarantees returns as high as 32% for some contracts, including contracts to purchase 50 head of cattle or more. Agridime includes these guarantees in the contracts themselves and displays them prominently on the company's website and in social-media ads promoting the investment, as reflected in the images below:



# BUY LIVE CATTLE

### Have you ever wanted to make money raising cattle without having to do all the work?

We know it sounds too good to be true, however, in order to meet increased demand we are partnering with individuals and organizations to contract cattle into our beef supply chain.

We supply retails outlets, meat distributors and restaurant food service companies with farm fresh beef. We are inviting individuals and organizations to purchase cattle with us in order to supply beef to these customers.

All cattle purchased during Q1 of 2023 will be guaranteed 15-20% yearly profits. We also offer 20% yearly profits on contracts of 50 or more.

23.     Agridime has also advertised the Cattle Contracts on an unrestricted, publicly available Facebook page with an animated video titled, "Make 15%-20% Yearly Returns by Purchasing Cattle With Us." The video explains that the investor's purchase payment covers the cost to "feed that animal to finish, fully process the beef into retail packaging, and then ultimately sell the beef."

24.     Agridime has engaged in a general solicitation of investors by using its publicly available website, unrestricted Facebook page, and other social media to attract investors. Agridime and its sales representatives have not taken steps to verify the accredited status of

7

investors, and they have not limited the offer or sale of the Cattle Contracts to accredited investors. Agridime's website allowed investors to purchase online without any income verification or disclosures. Agridime's stated practice has been to send investors their Cattle Contracts by email only *after* investors send funds to Agridime (via cash, wire transfer, check, Shopify, transfers from self-directed IRAs, or a number of other payment options, including installment payments). At that point, the investor signs the contract electronically, and then Link (or an authorized sales representative) affixes Link's electronic signature via DocuSign.

25.     Neither Agridime nor its Cattle Contract securities are registered with the Commission in any capacity.

**III.     Defendants Misused and Misappropriated Investor Funds**

26.     Despite Agridime's explicit claim on its website that it would use investor funds to purchase, feed, finish, process, and sell specific cattle, the company actually used investor funds to make Ponzi payments to earlier investors and to pay undisclosed sales commissions to Agridime salespeople.

**a.     Defendants Have Used At Least $58 Million in Investor Funds to Make Ponzi Payments**

27.      Contrary to its promises to investors, Agridime has acquired far fewer cattle than it has sold to investors in Cattle Contracts. Because of its failure to acquire, raise, feed, and finish enough cattle, as promised, Agridime has not generated—and cannot generate—sufficient revenues to repay its investors. As a result, Agridime does not have the assets needed to cover its obligations.

28.     During the period from December 1, 2022, to September 30, 2023, Agridime has used at least $58 million in investor funds from the sale of new Cattle Contracts to make

8

principal and profit payments to previous investors. In short, Agridime is operating a Ponzi scheme.

29.     As of September 5, 2023, Agridime held Cattle Contracts requiring them to pay investors more than $123 million in principal (obligations to repurchase cattle), plus approximately $24 million in guaranteed "profits." Given the company's cash balances of less than $1.5 million as of September 30, 2023, and insufficient operating revenues, it appears that Agridime's Ponzi scheme will soon implode, unless it continues to raise money from new investor-victims.

**b.   Defendants Paid Undisclosed Sales Commissions to Salespeople**

30.     Agridime pays its sales representatives a commission—typically 10%—for each Cattle Contract sold. Through May 2023, Agridime paid its salesforce aggregate commissions exceeding $11.1 million, including commissions of: (1) at least $5.6 million to a salesperson in North Dakota; (2) $1.3 million to Link and his wife; and (3) $1.3 million to Wood.

31.     When representing to investors how it will use their funds, Agridime does not disclose the 10% commission. For example, Agridime's website included a "Financial Summary" purporting to explain how all investor funds are to be used, as reflected in the image below.

# Financial Summary

**Here's how the financials breakdown for the 15-20% return on our cattle contracts:**

The customer purchases cattle from us for $2,000 per head. That $2,000 is used to purchase one steer or heifer, feed that animal to finish, fully process the beef into retail packaging and then ultimately sell the beef.

32.     The Financial Summary on Agridime's website does not mention sales commissions. Likewise, Agridime's advertisements and Cattle Contracts fail to mention them. Thus, paying commissions contravened Agridime's representations to investors concerning the use of investor funds.

## IV.     Defendants' Materially False and Misleading Statements and Omissions

33.     Agridime, Link, and Wood misled investors with promises of (in their own words) "too good to be true" guaranteed 15-32% annual profits. In reality, the company's cattle business did not generate revenue sufficient to pay the promised profits to its investors.

34.     Agridime's advertising and sales pitches touted the safety and security of the Cattle Contracts by claiming on Agridime's website, in the Cattle Contracts, and in sales pitches to investors that the Cattle Contract investments were protected by USDA bonding and insurance. Meanwhile, despite emphasizing the safety of the investment, Defendants failed to disclose to new and prospective investors that Agridime relied on investor funds to pay promised returns, thus concealing the Ponzi scheme.

35.     Defendants represented that investor funds would be used for specific purposes—feeding, finishing, and processing beef—but did not disclose that Agridime would use investor funds to pay 10% sales commissions to its salespeople. By omitting to disclose the commissions, Agridime's representations concerning the use of proceeds are, at best, incomplete and thus misleading under the circumstances.

36.     A reasonable investor would have considered it important to know that Agridime misappropriated more than $58 in investor funds to make Ponzi payments instead of purchasing, feeding, finishing, and processing cattle. Revelation of this diversion of investor funds, in

addition to the undisclosed payment of at least $11 million in commissions, would significantly alter the total mix of information available to investors.

## V.    Defendants Are Violating State Cease-and-Desist Orders and Continue to Defraud Investors

37.    Agridime continues to sell Cattle Contracts in numerous states, despite cease-and-desist orders issued by two states.

38.    In April 2023, the Arizona Corporation Commission issued a temporary cease-and-desist order, barring Agridime and Link from, among other things, selling unregistered securities and committing fraud in the purchase or sales of securities (Cattle Contracts) in violation of the Arizona Securities Act.

39.    Similarly, in May 2023, the North Dakota Securities Commission ordered Link and Agridime to cease and desist from selling unregistered securities (Cattle Contracts), acting as an unregistered broker-dealer, and engaging in fraudulent practices in connection with the offer and sale of investment contracts represented to be investments in cattle.

40.    Agridime has violated both the North Dakota and Arizona cease-and-desist orders. On November 13, 2023, Arizona filed a contempt action, alleging that Agridime, Link, and Link's wife knowingly and willfully continued to offer and sell unregistered securities and committed fraud in violation of Arizona's Securities Act and the previously issued cease-and-desist order.

41.    In fact, Agridime has sold more than $1 million of Cattle Contracts to Arizona residents *after* the entry of the Arizona cease-and-desist order. Additionally, on October 18, 2023, an Arizona-based Agridime salesman admitted under oath that he is still selling Cattle Contracts from Arizona. Agridime's records also reveal that it has sold at least 18 contracts

totaling over $9 million to North Dakota residents after the issuance of that state's cease-and-desist order.

## CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF</u>

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

#### *Against all Defendants*

42.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

43.     By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

      a.   employed a device, scheme, or artifice to defraud; and/or

      b.   made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.   engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

44.     By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### SECOND CLAIM FOR RELIEF

#### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

##### *Against All Defendants*

45.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

46.     By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

    a.  knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

    b.  knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.  knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

47.     By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CLAIM FOR RELIEF**

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

*Against All Defendants*

48.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

49.     By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly:

   a.   made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

   b.   for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

   c.   made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

50.     By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## FOURTH CLAIM FOR RELIEF

### Control Person Liability Under Section 20(a) of the Exchange Act

#### *Against Defendants Link and Wood*

51.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

52.     Defendant Agridime violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as alleged above in paragraphs 1 through 41.

53.     At all relevant times, Defendants Link and Wood directed and controlled Agridime's management and policies, including the conduct of its other representatives, and were controlling persons of Agridime and its representatives under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)]. Defendants Link and Wood were culpable participants in the fraudulent conduct described above and knowingly or recklessly induced many of the material misrepresentations and misstatements alleged herein.

54.     Defendants Link and Wood are liable as control persons under Section 20(a) of the Exchange Act for Agridime's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. If not enjoined, Link and Wood will continue to cause Agridime to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1.     Permanently enjoining Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e (c), and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2.      Permanently enjoining Defendants Link and Wood from, directly or indirectly, including but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Link or Wood from purchasing or selling securities for their own personal accounts;

3.      Barring Defendants Link and Wood from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. §§ 78l and 78o(d)];

4.      Ordering the Defendants to disgorge all ill-gotten gains obtained as a result of the violations alleged herein, plus prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

5.      Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein; and

6.      Imposing such other and further relief as the Court may deem just and proper.

Dated:  December 11, 2023                    Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

Matthew J. Gulde
Illinois Bar No. 6272325
Tyson M. Lies
Texas Bar No. 24087927
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone: (817) 978-3821
Facsimile: (817) 978-4927
guldem@sec.gov

*Attorneys for Plaintiff*

JS 44   (Rev. 10/20) — TXND (10/20)

2023 AM 8:49
RECEIVED-USDC-NDTX-FW

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew J. Gulde, SEC
801 Cherry Street, Fort Worth, Texas 76102, 817-978-3821

## DEFENDANTS

AGRIDIME, LLC, JED WOOD, and JOSHUA LINK

County of Residence of First Listed Defendant   Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

4-23CV-1224P

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [x] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | **FEDERAL TAX SUITS** | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 871 IRS—Third Party 26 USC 7609 | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
[15 U.S.C. § 78(b)]; [17 C.F.R. § 240.10b-5]; [15 U.S.C. § 77q(a)]; [15 U.S.C. §§ 77e(a) and 77e(c)];

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   Dec 11, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 10/20) - TXND (10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 4:23-CN-1224-P |
| | ) |
| v. | ) |
| | ) **FILED UNDER SEAL** |
| AGRIDIME LLC, | ) JURY TRIAL DEMANDED |
| JOSHUA LINK, and | ) |
| JED WOOD, | ) |
| | ) |
| Defendants, | ) |
| | ) |

## ORDER APPOINTING RECEIVER

Before this Court is the motion of Plaintiff U.S. Securities and Exchange Commission

("SEC," "Commission," or "Plaintiff") to appoint a receiver in the above-captioned action.  The

Court finds that based on the record in these proceedings, the appointment of a receiver in this

action is necessary and appropriate for the purposes of marshaling and preserving all assets of

the Defendants ("Receivership Assets") that: (a) are attributable to funds derived from investors

of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently

transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of

the Defendants (collectively, the "Recoverable Assets").  The Court further finds that this Court

has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and

that venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT:**

1.      This Court hereby takes exclusive jurisdiction and possession of the assets, of

whatever kind and wherever situated, of Defendants Agridime LLC ("Agridime"), Joshua Link,

and Jed Wood (collectively, the "Receivership Defendants").

2.      Until further Order of this Court, *Mr. Stephen P. Fahey* is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. <u>Asset Freeze</u>

3.      Except as otherwise specified herein, all Receivership Assets and Recoverable Assets are frozen until further order of this Court.  Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.  This freeze shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds.

## II. <u>General Powers and Duties of Receiver</u>

4.      The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed. R. Civ. P. 66.

5.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.

The Receiver shall assume and control the operation of the Receivership Defendants and shall

pursue and preserve all of their claims.

6.      No person holding or claiming any position of any sort with any of the

Receivership Defendants shall possess any authority to act by or on behalf of any of the

Receivership Defendants.

7.      Subject to the specific provisions in Sections III through XIV, below, the

Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all
property interests of the Receivership Defendants, including, but not
limited to, monies, funds, securities, credits, effects, goods, chattels, lands,
premises, leases, claims, rights and other assets, together with all rents,
profits, dividends, interest or other income attributable thereto, of
whatever kind, which the Receivership Defendants own, possess, have a
beneficial interest in, or control directly or indirectly ("Receivership
Property" or, collectively, the "Receivership Estates");

B.      To take custody, control and possession of all Receivership Property and
records relevant thereto from the Receivership Defendants; to sue for and
collect, recover, receive and take into possession from third parties all
Receivership Property and records relevant thereto;

C.      To manage, control, operate and maintain the Receivership Estates and
hold in his possession, custody and control all Receivership Property,
pending further Order of this Court;

D.      To use Receivership Property for the benefit of the Receivership Estates,
making payments and disbursements and incurring expenses as may be
necessary or advisable in the ordinary course of business in discharging
his duties as Receiver;

E.      To take any action which, prior to the entry of this Order, could have been
taken by the officers, directors, partners, managers, trustees and agents of
the Receivership Defendants;

F.      To engage and employ persons in his discretion to assist him in carrying
out his duties and responsibilities hereunder, including, but not limited to,
accountants, attorneys, securities traders, registered representatives,
financial or business advisers, liquidating agents, real estate agents,
forensic experts, brokers, traders or auctioneers;

G.      To take such action as necessary and appropriate for the preservation of

Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.     The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.     To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.     To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

K.     To take such other action as may be approved by this Court.

### III. Access to Information

8.     The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

9.     Within thirty (30) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants.

10.    Within thirty (30) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement and

4

accounting, with complete documentation, covering the period from January 1, 2017 to the

present:

> A.    Of all Receivership Property, wherever located, held by or in the name of
> the Receivership Defendants, or in which any of them, directly or
> indirectly, has or had any beneficial interest, or over which any of them
> maintained or maintains and/or exercised or exercises control, including,
> but not limited to: (a) all securities, investments, funds, real estate,
> automobiles, jewelry and other assets, stating the location of each; and (b)
> any and all accounts, including all funds held in such accounts, with any
> bank, brokerage or other financial institution held by, in the name of, or
> for the benefit of any of them, directly or indirectly, or over which any of
> them maintained or maintains and/or exercised or exercises any direct or
> indirect control, or in which any of them had or has a direct or indirect
> beneficial interest, including the account statements from each bank,
> brokerage or other financial institution;

> B.    Identifying every account at every bank, brokerage or other financial
> institution: (a) over which Receivership Defendants have signatory
> authority; and (b) opened by, in the name of, or for the benefit of, or used
> by, the Receivership Defendants;

> C.    Identifying all credit, bank, charge, debit or other deferred payment card
> issued to or used by each Receivership Defendant, including but not
> limited to the issuing institution, the card or account number(s), all
> persons or entities to which a card was issued and/or with authority to use
> a card, the balance of each account and/or card as of the most recent
> billing statement, and all statements for the last twelve months;

> D.    Of all assets received by any of them from any person or entity, including
> the value, location, and disposition of any assets so received;

> E.    Of all funds received by the Receivership Defendants, and each of them,
> in any way related, directly or indirectly, to the conduct alleged in the
> Commission's Complaint. The submission must clearly identify, among
> other things, all investors, the securities they purchased, the date and
> amount of their investments, and the current location of such funds;

> G.    Of all expenditures exceeding $1,000 made by any of them, including
> those made on their behalf by any person or entity; and

> H.    Of all transfers of assets made by any of them.

11.    Within thirty (30) days of the entry of this Order, the Receivership Defendants

shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal

income tax returns for the years 2017 through 2022 with all relevant and necessary underlying documentation.

12.     The individual Receivership Defendants and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

13.     To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of FED. R. CIV. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

14.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### IV.  Access to Books, Records and Accounts

15.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants.  All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the

6

Receiver.

16.     The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver or the Receiver's agents and/or employees.

17.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

> A.     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;
>
> B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;
>
> C.     Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,
>
> D.     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of

7

indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

19.    The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing or erasing anything on such premises.

20.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.    The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.    Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VI.  Notice to Third Parties

23.     The Receiver shall promptly give notice of his or her appointment to all known

officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and

limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to

effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to

an ownership interest to any Receivership Defendant shall, until further ordered by this Court,

pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for

such payments shall have the same force and effect as if the Receivership Defendant had

received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to

communicate with, and/or serve this Order upon, any person, entity or government office that he

or she deems appropriate to inform them of the status of this matter and/or the financial condition

of the Receivership Estates.  All government offices which maintain public files of security

interests in real and personal property shall, consistent with such office's applicable procedures,

record this Order upon the request of the Receiver or the SEC.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or

reroute mail which is related, directly or indirectly, to the business, operations or activities of any

of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for

the benefit of, the Receivership Defendants.  The Postmaster shall not comply with, and shall

immediately report to the Receiver, any change of address or other instruction given by anyone

other than the Receiver concerning the Receiver's Mail.  The Receivership Defendants shall not

open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when

received, to the Receiver.  All personal mail of any individual Receivership Defendants, and/or

any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

27.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

## VII.  Injunction Against Interference with Receiver

29.     The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.     Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

10

      B.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of his or her duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

      C.      Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

      D.      Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.      The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his or her duties.

31.      The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII.  **Stay of Litigation**

32.      As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his or her capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.      The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

### IX.  Managing Assets

35.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of [Name of Receivership Defendant]" together with the name of the action.

37.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

39.     Upon further Order of this Court, pursuant to such procedures as may be required

by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

40.    The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.    The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to: (a) obtaining a taxpayer identification number; (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon; and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2.

## X.  Investigate and Prosecute Claims

42.    Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his

or her discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

43.     Subject to his or her obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.  Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

44.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

45.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his or her Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII.  **Bankruptcy Filing**

46.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants.  If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

14

Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all entity

Receivership Defendants and may therefore file and manage a Chapter 11 petition.

47.    The provisions of Section VIII above bar any person or entity, other than the

Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XII.  Liability of Receiver

48.    Until further Order of this Court, the Receiver shall not be required to post bond

or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.    The Receiver and his agents, acting within scope of such agency ("Retained

Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall

not be liable to anyone for their own good faith compliance with any order, rule, law, judgment,

or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their

good faith compliance with their duties and responsibilities as Receiver or Retained Personnel,

nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted

by them except upon a finding by this Court that they acted or failed to act as a result of

malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

50.    This Court shall retain jurisdiction over any action filed against the Receiver or

Retained Personnel based upon acts or omissions committed in their representative capacities.

51.    In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of its intention, and the resignation

shall not be effective until the Court appoints a successor.  The Receiver shall then follow such

instructions as the Court may provide.

## XIII.  Recommendations and Reports

52.    The Receiver is authorized, empowered and directed to develop a plan for the fair,

reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable

Receivership Property (the "Liquidation Plan").

53.     Within thirty (30) days of the entry of this Order, the Receiver shall file a written

status report with the Court.  The status report will include a summary of the receivership

activities to date.  It will also include a proposed plan for administering the receivership going

forward, including (a) whether the receivership should continued (and, if so, why); (b) an

analysis of whether instituting appropriate bankruptcy proceedings would be in the best interests

of investors and creditors; and (c) if the Receiver recommends continuing the receivership going

forward, a proposed deadline by which the Receiver will submit the Liquidation Plan.

54.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall

file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status

Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the

report) the existence, value, and location of all Receivership Property, and of the extent of

liabilities, both those claimed to exist by others and those the Receiver believes to be legal

obligations of the Receivership Estates.

55.     The Quarterly Status Report shall contain the following:

A.      A summary of the operations of the Receiver;

B.      The amount of cash on hand, the amount and nature of accrued
        administrative expenses, and the amount of unencumbered funds in the
        estate;

C.      A schedule of all the Receiver's receipts and disbursements (attached as
        Exhibit A to the Quarterly Status Report), with one column for the
        quarterly period covered and a second column for the entire duration of
        the receivership;

D.      A description of all known Receivership Property, including approximate
        or actual valuations, anticipated or proposed dispositions, and reasons for
        retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by the
        Receivership Estate, including the need for forensic and/or investigatory
        resources; approximate valuations of claims; and anticipated or proposed

16

methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their claims;

G.      The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.      The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

56.      On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV.  Fees, Expenses and Accountings

57.      Subject to Paragraphs 58 – 64 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

58.      Subject to Paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him or her in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

59.      The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

60.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

61.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

62.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

63.     Each Quarterly Fee Application shall:

    A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

    B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

64.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

IT IS SO ORDERED, this **11** day of **DECEMBER**, 2023, at Fort Worth, Texas.

UNITED STATES DISTRICT JUDGE